466 So.2d 1201 (1985)
Dionisio GOMEZ and Ana Maria Suarez, His Wife, Appellants,
v.
Maria Cabrera ESPINOSA, Appellee.
No. 84-1728.
District Court of Appeal of Florida, Third District.
April 9, 1985.
*1202 David A. Donet, Coral Gables, for appellants.
Mascaro & Peppler and Charles Peppler, Coral Gables, for appellee.
Before BARKDULL, NESBITT and DANIEL S. PEARSON, JJ.
NESBITT, Judge.
Mr. Gomez appeals (a) an order, made pursuant to Florida Rule of Civil Procedure 1.540(b), vacating an order which granted both his motion to dismiss and his petition for habeas corpus, and (b) an order granting temporary, primary physical custody of his two children to their mother, Maria Cabrera Espinosa (Cabrera). We reverse.
Gomez and Cabrera lived together as man and wife for a number of years, with the relationship resulting in the birth of two sons, Dionisio, Jr. and Fernando. The couple spent most of their years together in El Salvador. In January 1980, Ms. Cabrera and the two children fled El Salvador and began residing in Hollywood, Florida. At approximately the same time, Mr. Gomez began a relationship with Ana Maria Suarez, to whom he is now married and with whom he now resides in Spain. In September 1981, Dionisio, Jr., began attending school in Spain. Fernando did the same in September 1982. Both children spent Christmas, Easter and the summer vacation with their mother in Florida.
In July 1983, while the children were in Florida with their mother, and while Mr. Gomez was vacationing in Florida, Maria Cabrera filed a petition which sought a determination of paternity and custody of the children. She also sought, and obtained, a temporary injunction which prohibited removal of the children from the court's jurisdiction. Gomez responded with *1203 a motion to dismiss the petition and a petition for a writ of habeas corpus seeking return of the children. The trial court dismissed the paternity count, finding that Gomez had acknowledged paternity. After a hearing, the trial judge found that the children were normal and in fine health and that their future health and welfare would not be threatened by a return to Spain. He also found that Florida was not the home state of the children and that none of the conditions listed in section 61.1308 of the Florida Statutes existed which would allow the court to exercise jurisdiction in making a custody determination.[1] The court entered orders dismissing the custody petition, dissolving the temporary restraining order prohibiting removal of the children from the court's jurisdiction and granting Gomez's petition for a writ of habeas corpus. Cabrera was ordered to turn the children over to Gomez on September 4, 1983. Cabrera's motion for rehearing and motion to set aside the habeas corpus order were denied on October 18, 1983. Cabrera did not appeal those rulings.
At the end of the hearing on Gomez's motion to dismiss, but after the trial judge had decided he had no jurisdiction to decide custody, Mr. Gomez represented to the court that he would allow the previous visitation practices to continue so that Cabrera could see her children during major holidays and the summer. On the advice of counsel in Spain, however, Mr. Gomez did not allow his children to visit Florida at Christmastime 1983.[2] Mr. Gomez offered to pay Cabrera's costs to visit the children in Spain, but she refused. Cabrera responded by filing, in April 1984, a motion to vacate the court's orders which dismissed the custody petition and granted the writ of habeas corpus.[3] The motion was made pursuant to Florida Rule of Civil Procedure 1.540(b)[4] and alleged that Gomez had committed fraud upon the court by misrepresenting that he would allow the children to visit at Christmastime. The trial judge ruled on the motion, indicating that the only reason he had previously declined to exercise jurisdiction was because Mr. Gomez had represented that he would continue to allow liberal visitation. He found that the misrepresentation of that fact was sufficient grounds for vacating the prior order. The court also found that the children and Cabrera had significant contacts with the state of Florida, that substantial evidence regarding the children's welfare was available in Florida and that no other state had jurisdiction over the child custody proceedings. Consequently, the judge vacated his previous orders and awarded Cabrera *1204 temporary, primary physical custody of the children.
Cabrera's motion to vacate alleged that Mr. Gomez's misrepresentation was a "fraud upon the court." This is clearly not so, however, and the trial court's ruling cannot be sustained on that ground. Only extrinsic fraud can constitute fraud on the court. DeClaire v. Yohanan, 453 So.2d 375, 376-77 (Fla. 1984). Extrinsic fraud involves conduct which is collateral to the issues tried in a case and occurs when an unsuccessful party has somehow been prevented from participating in a cause. Id. Mr. Gomez's representation in no way prevented Cabrera from fully and fairly presenting her claim. Therefore, it was not extrinsic fraud and not fraud upon the court.
The trial court's order cannot be affirmed on intrinsic fraud grounds[5] either because Gomez's representation, if fraud, was not the type of intrinsic fraud which Rule 1.540 was intended to reach. Intrinsic fraud is fraudulent conduct arising within a proceeding which pertains to the issues tried. DeClaire, 453 So.2d at 377. While the trial court, in its order of vacation, indicated that it originally declined to exercise jurisdiction only because Mr. Gomez had indicated he would continue the previous visitation practices, the record belies such a statement. First, the order dismissing Cabrera's petition does not even refer to Gomez's representation, but rather, declines to exercise jurisdiction on a finding that none of the bases for jurisdiction outlined in section 61.1308(1)[6] exist. Second, the transcript of the hearing demonstrates that (a) the trial judge declined to exercise jurisdiction before he obtained the representation from Mr. Gomez, and (b) the court obtained the representation in the hope that a Spanish court, where the trial judge believed jurisdiction lay, would enforce it. In other words, the representation was not, and could not have been, on these facts, the basis of the court's refusal to exercise jurisdiction. This is so because it did not pertain to the issue of whether or not the court had jurisdiction. See § 61.1308, Fla. Stat. (1983); see also Blum v. Avick, 172 So.2d 495, 498 (Fla. 3d DCA 1965) (refusing to grant relief from judgment on the basis of inconsistent, possibly perjurious, testimony on a secondary, nondispositive issue). Finally, the immateriality of the misrepresentation is further evidenced by the ground upon which the court assumed jurisdiction upon vacating its previous orders. The court purported to exercise jurisdiction under section 61.1308(1)(b) on a finding that the children and Cabrera *1205 had significant contacts with Florida and that substantial evidence concerning the children's welfare was available in Florida. Clearly, if this basis of jurisdiction in fact existed, which we are not deciding, it existed whether or not Mr. Gomez made the representation with regard to visitation. If Cabrera thought the original ruling on jurisdiction was incorrect she could have appealed. We will not allow her to use Rule 1.540 as a substitute for the appeal she never pursued. Pompano Atlantis Condominium Association, Inc. v. Merlino, 415 So.2d 153, 154 (Fla. 4th DCA 1982).
Cabrera's motion to vacate did not state grounds bringing it within the purview of Rule 1.540(b). Consequently, it was error to grant the motion and vacate the orders on Gomez's motion to dismiss and petition for writ of habeas corpus. Therefore, the order of vacation and the order awarding temporary primary custody to Cabrera are reversed.
Reversed.
NOTES
[1] We express no opinion on whether this ruling was correct as the question is not before us.
[2] Mr. Gomez's attorney expressed the opinion that it would not be advisable to allow the children to leave Spain both because the Spanish court in which proceedings had been begun might require their appearance and because allowing them to leave might be interpreted by the Spanish court as a relinquishment of custody.
[3] Gomez's Florida attorney received notice of this motion. Gomez challenges the sufficiency of the notice on due process grounds. We find, however, that the notice was adequate. See Fla.R.Civ.P. 1.080(a), (b); Bell v. All Persons Claiming Any Estate, Etc., 198 So.2d 35 (Fla. 3d DCA), cert. denied, 201 So.2d 894 (Fla. 1967); 7 J. Moore, Moore's Federal Practice § 60.28(3) at 321-22 (2d ed. 1983).
[4] The rule states in pertinent part:

Rule 1.540. Relief from Judgment, Decrees or Orders
... .
(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, decree, order or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; ... The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, decree, order or proceeding was entered or taken. A motion under this subdivision does not affect the finality of a judgment or decree or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, decree, order or proceeding or to set aside a judgment or decree for fraud upon the court.
[5] Intrinsic fraud is an appropriate ground for vacating an order if it is presented to the court by motion under Rule 1.540 within one year of the date the order was entered. Fla.R.Civ.P. 1.540(b).
[6] Jurisdiction. 
(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(a) This state:
1. Is the home state of the child at the time of commencement of the proceeding, or
2. Had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;
(b) It is in the best interest of the child that a court of this state assume jurisdiction because:
1. The child and his parents, or the child and at least one contestant, have a significant connection with this state, and
2. There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
(c) The child is physically present in this state and
1. The child has been abandoned, or
2. It is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected; or
(d) 1. It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), paragraph (b), or paragraph (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and
2. It is in the best interest of the child that a court of this state assume jurisdiction.