953 So.2d 755 (2007)
Carla R. MORRISON, Appellant,
v.
William E. WEST, Jr., Appellee.
No. 4D06-2345.
District Court of Appeal of Florida, Fourth District.
April 18, 2007.
Joseph L. Thillman of Gerstin & Associates, Boca Raton, for appellant.
Gerald F. Richman and Jill G. Weiss of Richman Greer Weil Brumbaugh Mirabito & Christensen, P.A., West Palm Beach, for appellee.
HAZOURI, J.
The trial court granted a motion brought by Appellee, William E. West, Jr. (West), to modify the final judgment in a probate case to which Appellant, Carla R. Morrison (Morrison), was a party. Morrison appeals the trial court's denial of her motion to vacate the trial court's order modifying that final judgment. We affirm.
On December 12, 2002, Morrison's husband died testate leaving a significant multi-million dollar estate. Several disputes arose between the executor of the estate and Morrison. Originally, Morrison was represented by Gary Woodfield, Esq. (Woodfield) of Edwards & Angell, LLP. She ceased that representation in August 2004. Morrison then entered into two contracts for legal representation with West, a North Carolina attorney.
West entered into settlement discussions in the probate action on Morrison's behalf. On January 19, 2005, a settlement was reached in the probate action. Pursuant to the settlement, Morrison was to receive $1 million outright, inter alia. On January 20, 2005, Morrison called Woodfield to advise him that she fired West and wanted to retain Woodfield again. At a hearing to approve the settlement agreement later that same day, Woodfield advised the court that an issue had arisen between West and *756 Morrison concerning the $1 million. Woodfield explained to the court:
Apparently, without going into any detail  and I am not fully familiar with the details at this point  but there is an issue as to a possible potential fee dispute there, or at least a misunderstanding at this point in time.
And my understanding is that this million dollars that was to go outright to Carla [Morrison] represented an aspect of the fee.
And so I have filed a notice of appearance today and have reached an agreement with Mr. West whereby this one million dollars that this settlement agreement provides for is to go directly to Carla, instead we have agreed that that will be deposited into my firm's trust bearing account and will remain in an interest-bearing trust account  bank account until we have resolved this fee issue.
So it has no substantive or really any impact on this settlement that is being presented to you. It's just in an exercise of caution and to fully advise you that Mr. Pressly [the executor's lawyer] has indicated that the settlement agreement reflects that this million dollars gets paid outright to Carla, and instead that is going to go into our firm's trust account.
Then, the following exchange occurred:
COURT: [Morrison] agrees that it goes to your trust account until the fee arrangements are resolved?
WOODFIELD: She does. I have discussed that with her. She is in agreement with that, Mr. West is in agreement with that, and Mr. Pressly is in agreement with that.
And hopefully we will be able to amicably resolve the matter and that will be the end of it.
The trial court approved the settlement and executed the final judgment on January 20, 2005. Neither the final judgment nor the settlement agreement referred to the disbursement of the $1 million to West.
In February 2005, West learned that Woodfield released the $1 million in the Edwards & Angell trust account to Morrison. On June 30, 2005, West filed a motion to modify the final judgment and requested that Morrison be ordered to redeposit the $1 million into the court registry pending further proceedings. On February 21, 2006, the trial court held a hearing on West's motion to modify the final judgment. West, Woodfield, and Morrison testified at the hearing. The trial court ruled:
And having observed the witness testimony today I find that Carla Morrison did in fact authorize Mr. Woodfield to withhold that $1 million and place it in a trust account, bank account, interest bearing until the fee issue has been resolved. I find that that portion of her testimony regarding it be for a short time only is not credible. And I find the testimony of Mr. West regarding these fee disputes to be credible.
So I am directing that this money be placed back in the Edwards and Angell trust account, interest bearing, not to be released under any circumstances without a further Court order until the fee issues are resolved.
The trial court directed that the money be returned to the Edwards & Angell account within 30 days. Morrison never complied.
On April 27, 2006, Morrison filed a motion to vacate the order requiring her to redeposit the funds in the Edwards & Angell account, pursuant to Florida Rules of Civil Procedure 1.540(b)(4) and 1.540(b)(5). Specifically, Morrison claimed that "the modification of the Final Judgment by this Court is equivalent to a prejudgment attachment of property without due process of law since the amount of *757 money being claimed by [West] is allegedly for attorney's fees." The trial court denied Morrison's motion to vacate.
Morrison argues that the trial court erred in not setting aside its order modifying the final judgment. We disagree. In Kroner v. Singer Asset Finance Company, L.L.C., 814 So.2d 454 (Fla. 4th DCA 2001), this court explained: "A trial court has broad discretion in determining whether to grant relief from a judgment. Likewise, we review orders of the trial court on such motions for abuse of discretion." Id. at 456 (citations omitted).
As West correctly argues, the trial court had the authority to enforce Woodfield's stipulation in open court that the $1 million would remain in the Edwards & Angell trust account pending the resolution of the fee dispute. See Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co., 639 So.2d 606, 608-09 (Fla.1994) (recognizing that "a trial judge has the inherent power to do those things necessary to enforce its orders, to conduct its business in a proper manner, and to protect the court from acts obstructing the administration of justice"). Moreover, the trial court chose to accept West's testimony, and discredit Morrison's testimony, a determination within its exclusive province. See Nical of Palm Beach, Inc. v. Lewis, 815 So.2d 647, 651 (Fla. 4th DCA 2002) (citing Romano v. Goodlette Office Park, Ltd., 700 So.2d 62 (Fla. 2d DCA 1997)) (acknowledging that "[t]he weighing of evidence and issues of credibility are clearly vested with the trial court").
Accordingly, we find that the trial court did not abuse its discretion.
Affirmed.
GUNTHER and POLEN, JJ., concur.